IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARY R. FERRIGNO, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     vs | ) | Civil Action No. 08-1140 |
| | ) | Judge Terrence F. McVerry |
| FRANKLIN GROUP, INC., | ) | Chief Magistrate Judge Amy Reynolds Hay |
| t/d/b/a TSO OF OHIO, | ) | |
|     Defendant. | ) | |

REPORT AND RECOMMENDATION

I.    Recommendation

It is respectfully recommended that the defendant's motion for summary judgment (Document No. 25) be denied.

II.    Report

Presently before the Court is a motion for summary judgment submitted by the defendant, Franklin Group, Inc., t/d/b/a TSO of Ohio. For reasons discussed below, the defendant's motion for summary judgment should be denied.

The plaintiff, Gary R. Ferrigno, has filed an amended employment discrimination complaint, alleging that the defendant terminated his employment because of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA") and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, et seq. ("PHRA"). The plaintiff was employed by the defendant from February 17, 2004 until February 11, 2008. (Amended Complaint at ¶ 6 and Answer thereto). On February 12, 2008, the defendant terminated his employment, at which time the plaintiff was 52 years of age. (Id. at ¶¶ 3, 10). Following his discharge, the plaintiff filed a timely complaint with the Pennsylvania Human Relations Commission, which was cross-filed with the Equal Employment Opportunity Commission. (Id. at ¶ 2). Having satisfied all procedural and administrative requirements under the ADEA and the

PHRA, the plaintiff commenced this action, invoking the Court's jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 1367.  (Id. at ¶¶ 1-2).

The record shows that during the plaintiff's employment with the defendant, it maintained a written "Standards of Conduct" that subjected employees to discipline, including termination, for leaving work without authorization.  (Defendant's Concise Statement of Material Facts ("CSMF") at ¶¶ 9-10 and Plaintiff's response thereto).  In pertinent part, the "Standards of Conduct" provided:

> **THE FOLLOWING VIOLATIONS MAY RESULT IN IMMEDIATE SUSPENSION AND/OR DISCHARGE UPON APPROVAL OF MANAGEMENT.**
> .....
>
> 2. Refusal to carry out the assignment of a supervisor or refusal to comply with company policies and procedures (insubordination).
> ....
>
> 13.  The unauthorized leaving of company premises during work hours.

(Id. at ¶ 10).  The plaintiff was aware of the defendant's "Standards of Conduct," having acknowledged in writing that he read and understood them when he was hired.  (Id. at ¶ 12).

The defendant also maintained a written "Disciplinary System," which provided in part that "[a]ny conduct that interferes with or adversely affects the work environment (productivity, safety, established procedures, etc.) is grounds for disciplinary action ranging from oral warnings to immediate termination."  (Id. at ¶¶ 14-15).  The defendant's "Disciplinary System" utilized a "points" system, in which points were assigned for particular offenses; it provided that "[i]f an employee accumulates 10 or more points in a twelve month period, his/her employment may be terminated."  (Id. at ¶ 16).

Prior to the plaintiff's last day of employment with the defendant on February 11, 2008, he was not assigned any points under the defendant's "Disciplinary System."  (Plaintiff's

Statement of Material Facts ("SMF") at ¶¶ 61-63 and Defendant's response thereto).  On February 11, 2008, the plaintiff's supervisor, Mark Johnston, assigned him 10 points under the system.  (Id. at ¶¶ 94, 96, 99, 102).

At the time of his discharge, the plaintiff worked as a materials handler for the defendant.  (CSMF at ¶ 23 and Plaintiff's response thereto).  Some of his duties entailed operating a forklift and unloading stock from the buildings.  (Id.).  On February 11, 2008, the plaintiff arrived at the job site prior to his 6:00 a.m. start time and punched in for work.  (SMF at ¶ 65 and Defendant's response thereto).  It was extremely cold that day.  (Id. at ¶ 66).  Mark Johnston, the plaintiff's supervisor, left a list of tasks that needed to be completed that day, some of which required the plaintiff to work outside.  (CSMF at ¶ 36 and Plaintiff's response thereto).

Shawn Meskell, a 39 year-old co-worker of the plaintiff, also arrived early that morning, where he was assigned to work as a forklift operator.  (Id. at ¶¶ 39, 40; SMF at ¶ 105, and Defendant's response thereto).  The plaintiff spoke to Meskell and told him he was feeling sick and had the chills and a fever.  (SMF at ¶ 68 and Defendant's response thereto).  Meskell informed the plaintiff that he had been up all night, because his pipes had frozen.  (Id. at ¶ 69).  They both decided to leave work.  (Id. at ¶¶ 75, 76).

At around 7:00 a.m., the plaintiff and Shawn Meskell walked off the job.  (CSMF at ¶ 43 and Plaintiff's response thereto).  Both of them punched out before leaving, but neither of them informed their supervisor or got permission to leave.  (SMF at ¶ 78 and Defendant's response thereto).  At the time they left the job site, their Supervisor, Mark Johnston, and Plant Manager Ed Brown were not there.  (Id. at ¶ 77).

At around 8:00 a.m. on February 11, 2008, Mark Johnston reported to Plant Manager Brown that both the plaintiff and Meskell left the job site without telling anyone.  (CSMF at ¶ 50

and Plaintiff's response thereto). Brown, who was a personal friend with the plaintiff, testified that he called and conveyed the news to Ellen Sanders at the defendant's Rocky Mountain, Virginia headquarters, and Sanders told him to fire both of them. (Id. at ¶¶ 30, 52). Brown asked Sanders to wait until he investigated the incident, and she agreed. (Id. at ¶ 52).

Ed Brown testified that to investigate the matter, he spoke to several employees who were present when Meskell and the plaintiff left work, such as Larry Wolfe and David Gibson. (Id. at ¶ 53; Affidavit of Ed Brown at p. 12). According to employees Wolfe and Gibson, they heard the plaintiff complain that it was too cold to work outside; neither of them thought the plaintiff looked sick. (CSMF at ¶¶ 54-56, 58 and Plaintiff's response thereto). Ed Brown testified that he called Ellen Sanders, told her the results of his investigation, and recommended that the plaintiff be discharged, while Meskell be given a three day suspension. (Id. at ¶ 61). Ms. Sanders agreed. (Id.).

Ed Brown informed Mark Johnston of the decision to terminate the plaintiff and suspend Shawn Meskell, and he instructed Johnston to "write it up." (Id. at ¶ 62). Pursuant to the defendant's "Disciplinary System," Mark Johnston drafted disciplinary forms for the plaintiff and Meskell, assigning 10 points to the plaintiff and 7 points to Meskell, which Ed Brown approved. (Id. at ¶¶ 63-68; SMF at ¶¶ 87-90 and Defendant's response thereto).

On February 12, 2008, the plaintiff reported to work and was told that Mark Johnston wanted to see him and Meskell. (SMF at ¶ 84 and Defendant's response thereto). Johnston met with Meskell first and gave him two Personal Advisory Notices related to his leaving work without permission the day before. (Id. at ¶¶ 86-87). On one Notice, Meskell received 2 points under the defendant's "Disciplinary System" for leaving work without consent. (Id. at ¶ 88). On the other Notice, Meskell received 5 points for insubordination. (Id. at ¶ 89). Meskell testified

that at their meeting, Johnston told him he was being given 7 points and suspended for three days, while they were "getting rid of [the plaintiff] because his old ass can't take the cold." (Id. at ¶¶ 90-91).

Johnston then met with the plaintiff and gave him three Personal Advisory Notices. (Id. at ¶ 94). On one Notice, the plaintiff received 3 disciplinary points for leaving work without consent, even though Meskell was only given 2 points for the same offense. (Id. at ¶¶ 96-97). Johnston later acknowledged that he should have given Meskell 3 points for leaving work without consent and made a clerical error in assigning him 2 points. (Id. at ¶ 98). On the second Notice given to the plaintiff, he received 5 points for insubordination, just as Meskell had. (Id. at ¶ 99). On his third Notice, the plaintiff was assigned 2 disciplinary points for a poor attitude. (Id. at ¶ 102).

In the defendant's answer to plaintiff's first interrogatories No. 3, where it was asked to identify every reason that the plaintiff was discharged, the defendant stated:

> Based upon [its] disciplinary point system, if an employee accumulates ten (10) or more points in a twelve month period, his/her employment may be terminated. On February 11, 2008, the Plaintiff accumulated ten (10) points as he was written up for insubordination (5 points), poor attitude (2 points) and leaving work without consent or permission of management (3 points). Plaintiff also violated defendant's Standards of Conduct for which discharge was a known sanction. Accordingly, Plaintiff was terminated.

(Id. at ¶ 166).

Within a two week period of the plaintiff's discharge, the defendant recalled several younger workers who had previously been laid off -- Jacob Parks (age 19), Brady Hedrick (age 23), and Roy Probst (age 28) -- some of whom performed the plaintiff's duties. (Id. at ¶¶ 106-

112). According to the plaintiff, younger workers were treated more favorably by the defendant. (Amended Complaint at ¶ 13).

For instance, the plaintiff argues that he was discharged for leaving the job site without authorization in violation of the "Standards of Conduct," yet younger employee Shawn Meskell engaged in the same misconduct on the same date, but he was only suspended for three days. The plaintiff also argues that to the extent he was discharged for receiving 10 points in the company's disciplinary system, younger workers Jacob Parks and Brady Hedrick were assessed more than 10 points before the defendant discharged them. Based on these facts, the plaintiff contends that the defendant violated the ADEA (Count I of the amended complaint) and the PHRA (Count II).

The defendant has moved for summary judgment on the plaintiff's claims. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©.

In support of its motion, the defendant avers that the plaintiff violated company policy by leaving work on February 11, 2008 without informing his supervisor. The defendant insists that due to the plaintiff's admitted, willful violation of company policy which formed the basis for his discharge, he cannot prove that age was the reason for his termination. As discussed more fully below, summary judgment is not appropriate in this case.

The ADEA prohibits an employer from discharging any individual or otherwise discriminating against any individual "*because of* such individual's age." 29 U.S.C. § 623(a)(1) (emphasis added). In relevant part, the PHRA also prohibits an employer from discharging an individual because of age. 43 P.S. § 955(a).

The United States Supreme Court has stated that "the ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." Gross v. FBL Financial Services., Inc., 129 S.Ct. 2343, 2350 (2009), citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993). In Gross, the Court stated that "the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." 129 S.Ct. at 2349. Rather, to establish a claim under the ADEA, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." Id. at 2350.

Significantly, in Gross, the Court found it was improper to shift the burden of persuasion to a defendant in an ADEA case, stating: "the burden of persuasion necessary to establish employer liability is the same in alleged mixed-motive cases as in any other ADEA disparate treatment action. A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision." Id. at 2351. The Court instructed that "[t]he burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in the decision." Id. at 2352. In so holding, the Court noted it had not definitively decided whether the evidentiary framework of McDonnell-Douglas v. Green, 411 U.S. 792 (1973), was appropriate in ADEA cases. Gross, 129 S.Ct. at 2349, n.2.[1]

---

1. Under the McDonnell-Douglas framework, "an employee must first establish a prima facie case of discrimination, after which the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment decision. If the employer articulates one or more such reasons, the aggrieved employee must then proffer evidence that is sufficient to allow a reasonable finder of fact to find by a preponderance of the evidence that the employer's proffered reasons are false or pretextual." Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005).

Following the Supreme Court's opinion in Gross, the Third Circuit Court of Appeals addressed whether Gross rendered the aforesaid McDonnell-Douglas analysis inapplicable to ADEA cases.  In Smith v. City of Allentown, 589 F.3d 684, 691 (3d Cir. 2009), the Court opined: "While we recognize that Gross expressed significant doubt about any burden-shifting under the ADEA, we conclude that the but-for causation standard required by Gross does not conflict with our continued application of the McDonnell-Douglas paradigm in age discrimination cases."  The Court in Smith explained:

> Gross stands for the proposition that it is improper to shift the burden of persuasion to the defendant in an age discrimination case.  McDonnell-Douglas, however, imposes no shift in that particular burden... Throughout [the McDonnell-Douglas] burden-shifting exercise, the burden of persuasion, including the burden of proving 'but for' causation ... remains on the employee.  Hence, Gross, which prohibits shifting the burden of persuasion to an ADEA defendant, does not forbid our adherence to precedent applying McDonnell-Douglas to age discrimination claims...

Id. (citations omitted).

Here, the plaintiff has not presented direct evidence of age discrimination.  Thus, we will evaluate his ADEA and PHRA claims under the framework articulated in McDonnell Douglas for cases involving indirect evidence of discrimination.[2]

Under the McDonnell-Douglas standard, the plaintiff has the initial burden of establishing a prima facie case of discrimination.  A plaintiff alleging adverse treatment because of age may satisfy his prima facie case by showing: (1) he was over 40 years old; (2) the defendant took an adverse employment action against him; (3) he was qualified for the position which he held; and

---

2. The Third Circuit Court of Appeals has noted that "[t]he same legal standard applies to both the ADEA and the PHRA and therefore it is proper to address them collectively."  Milby v. Greater Philadelphia Health Action, 339 Fed.Appx. 190, 191 n.3 (3d Cir. 2009), quoting Kautz v. Met-Pro Corp., 412 F.3d 463, 466 n.1 (3d Cir. 2005).

(4) he was replaced by a person sufficiently younger, or there is evidence surrounding the adverse action that gives rise to an inference of discrimination. Smith, supra, 589 F.3d at 689; also see, O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996). The plaintiff has met this burden.

In turn, the defendant has sustained its burden of production by presenting a legitimate, non-discriminatory reason for terminating the plaintiff's employment. As discussed above, it asserts that the plaintiff willfully violated company policy by walking off the job without authorization and accumulated 10 points under its "Disciplinary System."

At this juncture, it is incumbent upon the plaintiff to satisfy his ultimate burden of persuasion by producing evidence that the defendant's articulated reason for its adverse employment action was pretextual. The plaintiff may meet this burden in one of two ways: by introducing evidence

> from which a factfinder could reasonably either
> (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

To show that his discharge was a pretext for age discrimination, the plaintiff makes several arguments. First, he asserts that the defendant treated a similarly situated younger employee, Shawn Meskell, more favorably under its disciplinary policy, as it did not discharge Meskell (as it did him) for engaging in the same conduct on the same day. Notably, Ed Brown testified that he decided to discharge the plaintiff because he willfully walked off the job without permission, not because he was assigned 10 disciplinary points. (SMF at ¶¶ 164-165 and Defendant's response thereto). That being so, it raises questions as to why the defendant

discharged the 52 year old plaintiff, but only suspended for three days 39 year old Shawn Meskell when they both left the job site without permission at the same time.

In recommending that the plaintiff be discharged, while Meskell be suspended for three days, Ed Brown told Ellen Sanders that Shawn Meskell was a good employee. (CSMF at ¶ 61 and Plaintiff's response thereto). However, the defendant also regarded the plaintiff as a good employee. Indeed, on January 22, 2008, less than a month before the plaintiff was discharged, Ed Brown sent an e-mail to the defendant's President, Carey Garst, regarding company layoffs, and identified the plaintiff as one of nine employees he would retain because of good performance and attitude. (SMF at ¶¶ 32-37 and Defendant's response thereto).

The defendant also asserts that Ed Brown decided to discharge the plaintiff because he believed the plaintiff coerced Meskell into leaving work that day. (CSMF at ¶ 60). However, Larry Wolfe, an employee that Brown claims to have interviewed about the incident, testified that he did not see the plaintiff attempt to coerce Meskell to leave work. (Larry Wolfe Deposition at pp. 9-10). Further, Shawn Meskell avers that the plaintiff did not encourage him to leave work. (Shwan Meskell Deposition at pp. 42-43).

Not only did the defendant discipline the plaintiff more harshly than the younger Meskell for leaving the job site without authorization, it deviated from its "Disciplinary System" by assessing Meskell fewer points for engaging in that offense. Under the defendant's disciplinary system, an employee who leaves work without authorization will be assessed 3 points. (Doc. 28-6: Defendant's Exhibit F). While the plaintiff was given 3 points for that infraction by his supervisor, Mark Johnston, Johnston only assessed Meskell 2 points for the same misconduct (which Johnston later admitted was a mistake). (SMF at ¶¶ 96-98 and Defendant's response thereto).

A plaintiff may establish pretext by showing that he was subjected to an impermissible double standard. Waldron v. S L Industries, Inc., 56 F.3d 491, 499-500 (3d Cir. 1995). Such a standard may be predicated "on a factual showing that similarly-situated, non-protected employees were treated better or dealt with less harshly than the plaintiff." Stahlnecker v. Sears, 2009 WL 661927, at *6 (E.D.Pa., March 11, 2009). Pretext may also be shown if "the employer has treated more favorably similarly situated persons not within the protected class." Simpson v. Kay Jewelers, 142 F.3d 639, 645 (3d Cir. 1998). Certainly, the defendant's disparate treatment of the plaintiff and Shawn Meskell evinces pretext.

To further show pretext, the plaintiff points out that his supervisor, Mark Johnston, made several age-based statements about him, some within the context of his discharge. Specifically, in February 2008, Johnston told Shawn Meskell that "if [the plaintiff] does not speed up his butt, he's out of here. He's too old to cut the mustard here anyway." (SMF at ¶ 31 and Defendant's response thereto). Further, when Johnston met with Meskell on February 12, 2008, Johnston told him they were "getting rid of [the plaintiff] because his old ass can't take the cold." (Id. at ¶ 91).

Mark Johnston was not involved in the decision to terminate the plaintiff's employment. However, Johnston drafted Personal Advisory Notices and assessed disciplinary points to the plaintiff and Meskell for their conduct on February 11, 2008 (giving the plaintiff 3 Notices and 10 points, while giving Meskell 2 Notices and 7 points).

The Third Circuit Court of Appeals has held that comments by individuals outside of the decision-making chain "are stray remarks, which, standing alone, are inadequate to support an inference of discrimination." Walden v. Georgia-Pacific Corp., 126 F.3d 506, 521 (3d Cir. 1997). However, "such remarks can still constitute evidence of the atmosphere in which the employment decision was carried out, and therefore can be relevant." Id. "Accordingly, stray

remarks by nondecisionmakers may be properly used by litigants as circumstantial evidence of discrimination." Id., citing Abrams v. Lightolier, Inc., 50 F.3d 1204, 1214 (3d Cir. 1995).

In further support of pretext, the plaintiff points to other instances where the defendant treated younger workers more favorably, such as in its dealings with Jacob Parks and Brady Hedrick. The defendant recalled younger workers Parks and Hedrick after it discharged the plaintiff.

Nineteen year old Jacob Parks was hired by the defendant on June 4, 2007. (SMF at ¶ 115 and Defendant's response thereto). On October 22, 2007, Parks received a Personal Advisory Notice and was assessed 2 points because he was late and missed a lot of work. (Id. at ¶ 116). In January of 2008, Parks was incarcerated and unable to work. (Id. at ¶ 118).

On February 26, 2008, the first day Parks was recalled from layoff, he left work without his supervisor's permission. (Id. at ¶ 119). Parks was not terminated for that infraction; rather, he was given 3 points under the defendant's "Disciplinary System." (Id. at ¶ 120). The next day, February 27, 2008, Parks did not report to work, nor call off. (Id. at ¶ 121). Later that day, Parks called the office and told Ed Brown he did not go to work because he thought he was fired for leaving early the previous day. (Id. at ¶ 122). Despite Parks' actions, the defendant did not discharge him; instead, it gave Parks 2 disciplinary points, and Brown told him to report to work the following day. (Id. at ¶ 124).

The next day, February 28, 2008, Parks again did not report to work. (Id. at ¶ 125). However, the defendant did not discharge him; it issued him 4 disciplinary points. (Id. at ¶ 126). At that juncture, Parks had accumulated 12 points. (Id.). On February 29, 2008, Parks again failed to report to work, whereupon he was discharged. (Id. at ¶ 127). At that time, Parks had

accumulated 16 points under the defendant's "Disciplinary System" and only worked one-half day since his recall from layoff. (Id. at ¶ 128).

Twenty-three year old Brady Hedrick also accumulated more than 10 disciplinary points before the defendant discharged him. (Id. at ¶ 129). On February 19, 2007, Hedrick received 5 points related to his calling off work and tardiness. (Id. at ¶ 130). On November 2, 2007, Hedrick was assessed 2 points for failing to inform the proper person that he was calling off work. (Id. at ¶ 132).

On February 14, 2008, shortly after his recall from layoff, Hedrick did not report to work, nor call off. (Id. at ¶ 133). Johnston gave Hedrick 4 disciplinary points, which raised his total to 11 points, but the defendant did not discharge him. (Id. at ¶ 134). On February 15, 2008, Hedrick again failed to report to work, at which time he was discharged. (Id. at ¶ 135).

In contrast to younger workers Parks and Hedrick, the plaintiff did not receive any disciplinary points in his nearly four years of employment; yet when the plaintiff left work without permission on February 11, 2008, he was issued 10 points and discharged. Younger employee Shawn Meskell also left work without permission on February 11, 2008, but he was only assessed 7 points and given a 3 day suspension by the defendant. Based on these facts, the plaintiff has proffered evidence of pretext. That is, he has presented evidence from which a factfinder could reasonably believe that age was a determinative cause for his discharge.

Therefore, since a genuine issue of material fact is in dispute, it is recommended that the defendant's motion for summary judgment be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections and responses thereto in accordance

with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute waiver of any appellate rights.

                              Respectfully submitted,

                              /s/ *Amy Reynolds Hay*
                              Chief United States Magistrate Judge

Dated: 1 March, 2010

cc:    Hon. Terrence F. McVerry
        United States District Judge

        All counsel of record by Notice of Electronic Filing